

1 | R. SCOTT ERLEWINE (State Bar No. 095106)
MEAGAN MCKINLEY-BALL (State Bar No. 245375)
2 | PHILLIPS, ERLEWINE & GIVEN LLP
One Embarcadero Center, Suite 2350
3 | San Francisco, California 94111
Telephone: (415) 398-0900
4 | Facsimile: (415) 398-0911

5 | Attorneys for Plaintiff
NORCA INDUSTRIAL, LLC
6

7

8

9 | IN THE UNITED STATES DISTRICT COURT

10 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13 | NORCA INDUSTRIAL, LLC, a New York )    CASE NO.
Limited Liability Company,               )
14 |                                       )                EDL
            Plaintiff,                    )
15 |                                       )    **COMPLAINT FOR TEMPORARY**
v.                                        )    **RESTRAINING ORDER AND**
16 |                                       )    **PRELIMINARY INJUNCTION**
ROBERT WREN, an individual; PRIMROSE      )    **AND DAMAGES: MISAPPRO-**
17 | METALS, INC., a California corporation; )    **PRIATION OF TRADE**
RICHARD RAYBIN, an individual; LIFETIME   )    **SECRETS, UNFAIR**
18 | CAPITAL GROUP, an unknown entity;       )    **COMPETITION, BREACH OF**
VICTORIA PICOLOTTI, an individual;        )    **FIDUCIARY DUTY, BREACH OF**
19 |                                        )    **DUTY OF LOYALTY, INTEN-**
            Defendant.                     )    **TIONAL INTERFERENCE WITH**
20 |                                        )    **ADVANTAGEOUS BUSINESS**
                                           )    **RELATIONS, INTENTIONAL**
21 |                                        )    **INTERFERENCE WITH**
                                               **PROSPECTIVE ECONOMIC**
22 |                                            **ADVANTAGE, MISAPPRO-**
                                               **PRIATION OF EMPLOYER**
23 |                                            **PROPERTY,**

                                               **DEMAND FOR JURY TRIAL**
24

25

26

27

28

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S:\Clients\Norca\8049.15 (Wren)\pld\rse-complaint-062907.wpd

**INTRODUCTION**

1.     This is an action for injunctive relief and damages arising out of one or more defendants' misappropriation of trade secrets and confidential and proprietary information, unfair competition, breach of fiduciary duty, breach of duty of loyalty, intentional interference with advantageous business relations and prospective economic advantage, and misappropriation of employer property.

**JURISDICTION AND VENUE**

2.     The jurisdiction of this Court over the subject matter of this action is predicated on 28 USC Section 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

3.     Venue is proper in this Court pursuant to 28 USC §1391(a) and is founded on the fact that a substantial part of the events on which the claims are based is the subject of this action.

**THE PARTIES**

4.     Plaintiff NORCA INDUSTRIAL LLC (hereafter "NORCA") is, and at all times relevant was, a limited liability company duly organized and existing under the laws of the State of New York, having its principal place of business in the State of New York.

5.     Defendant ROBERT WREN (hereafter "WREN") is an individual, who is, and at all times relevant was, domiciled in the State of California.

6.     Defendant PRIMROSE METALS, INC. (hereafter "PRIMROSE") is, and at all times relevant was, a corporation purportedly organized and existing under the laws of the State of California, having its principal place of business in Burlingame, California.

7.     Defendant RICHARD RAYBIN (hereafter "RAYBIN") is an individual, who is and at all time relevant was, domiciled in the State of California.

8.     Defendant LIFETIME CAPITAL GROUP (hereafter 'LTG") is a business organization, form unknown, having its principal place of business in the State of California. On

1  information and belief, defendant RAYBIN is, and at all times relevant was, the managing

2  director of LTG.

3          9.      Defendant VICKIE PICOLOTTI (hereafter "PICOLOTTI") is an individual, who

4  is, and at all times relevant was, domiciled in the State of California.

5          10.     NORCA is informed and believes that at all times mentioned herein, each of the

6  defendants was acting as the co-conspirator, joint venturer, agent, servant, employee or employer

7  of each of the other defendants and in acting or failing to act as alleged in this Complaint, each

8  defendant was acting within the course and scope of such conspiracy, joint venture, agency,

9  service or employment and with the permission, consent, approval and ratification of each of the

10  other defendants. NORCA is informed and believes that at all relevant times each of the

11  defendants was acting in concert with each of the other defendants towards a common goal.

12                                    **BACKGROUND**

13          11.     NORCA is and at all times relevant was primarily engaged in selling specialized

14  "boiler tubes" ordered for customer specifications in the power generation business, and selling

15  through distributors industrial pipes, tubing, valves, fittings and flanges. NORCA is one of

16  North America's leading providers of these products. The claims in this case primarily relate to

17  the boiler tube business. Given that boiler tubes are used to construct or refurbish large power

18  generation facilities, each order often ranges between $1 Million - $3.5 Million.

19                                  The Boiler Tube Business

20          12.     The "boiler tube" business is complex and the barriers to entry are substantial.

21  NORCA contracts with a foreign manufacturer to have the boiler tubes specially manufactured to

22  the customer's specifications (most of which are different) and then imports the tubes to the

23  United States or elsewhere for sale and delivery to the customer. This involves, for example,

24  orders to specifications, foreign manufacturers, foreign and domestic buyers, substantial capital

25  and financing requirements (because NORCA purchases the goods), and a myriad of logistical

26  problems such as foreign quality control, customs, shipping and international insurance. It

27

28

1  requires substantial expertise and having established, long-term relationships with a network of
2  manufacturers (and their intermediaries) located in Asia, customers and other providers (e.g.,
3  insurance companies, banks, shippers, freight forwarders, customs brokers).   NORCA also bears
4  the potential risk that a customer will default on payment for multi-million dollar order(s).

5                                    NORCA's Critical Manufacturer in Korea

6         13.    A major key to NORCA's success and profitability is, and at all times relevant
7  was, its valuable relationship with a particular manufacturer, Changwon (now known as "Posco
8  Specialty Steel Co. Ltd." - hereafter "Changwon") located in Korea.  Changwon is and at all
9  times was Norca's principal manufacturer for boiler tubes.  Until the recent actions of defendants
10 as described below, Norca was the exclusive representative for Changwon to Norca's U.S. based
11 customers for delivery to their worldwide fabrication facilities.   This type of arrangement is a
12 standard practice followed by Korean mills.  Norca, Changwon and Changwon's intermediaries'
13 personnel frequently visited Norca customers together to market Norca's boiler tube products.

14                    Norca's Trade Secrets and Confidential and Proprietary Information

15        14.    NORCA's success and profitability is and at all times relevant was dependent in
16 significant part upon maintaining the confidentiality of its trade secrets and confidential,
17 proprietary information.  This includes, for example and without limitation, the following:

18        a.    NORCA's pricing information, pricing strategies, pricing formulation
19 methods and profit margins;

20        b.    NORCA's proprietary credit insurance program.  (This program was
21 developed to allow NORCA to transact business with potential customers which NORCA deems
22 to be credit risks to guard against the possibility that such customers will default on their
23 payment obligations, was extremely difficult to obtain, is unique to the industry, very
24 complicated and took months to negotiate.)

25        c.    The identity of the complete list of manufacturing facilities used by
26 NORCA and the specific contact person at each; the identities of the intermediaries used by
27
28

1  NORCA to contact and negotiate with each such facility and the specific contact person for each;
2  the credit, payment terms, shipping, insurance and other requirements demanded or accepted by
3  each such facility; and NORCA's evaluation of the expertise, competence and reliability of each
4  facility to manufacture particular types of products to specification in a timely fashion.

5         d.      The identity of NORCA's customers and the specific contact names for
6  each, the product specifications and requirements for each and NORCA's working knowledge of
7  the decision-making process for each customer.

8         e.      NORCA's proprietary software, which contains, among other things,
9  NORCA's entire "trading package" with respect to the non-boiler tube business. (This software
10 is used by NORCA to, *inter alia*, analyze worldwide supplier and market information and
11 formulate quotes on its broad distributor line of products.)

12        15.     NORCA has spent years and significant company resources to develop, establish
13 and maintain the information, materials and relationships set forth in paragraph 14, which are not
14 known to the general public nor within the industry.   They enable NORCA to operate quickly,
15 effectively and competitively in the marketplace. NORCA places the utmost value on its trade
16 secrets and other confidential proprietary information. NORCA takes, and at all relevant times
17 took, reasonable steps to ensure the secrecy of its trade secrets and other proprietary information
18 by, among other things, limiting access to such information to those employees who need to
19 know the information.

20                               Robert Wren

21        16.     Beginning in approximately1998, NORCA hired defendant WREN as a vice
22 president to sell products on behalf of NORCA to NORCA's customers. At the time of his
23 hiring, WREN resided in the State of California, and for convenience sake, SVF, a NORCA
24 affiliate, opened a small office in Burlingame, California for WREN and one or more other
25 NORCA employees to work from. As part of his NORCA sales duties, WREN principally

26
27
28

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S:\Clients\Norca\8049.15 (Wren)\pld\rse-complaint-062907.wpd

1  worked with one particular buying agent (hereafter "Buying Agent"), who was associated with
2  NORCA and located in Korea.

3      17.    As part of his employment, WREN at all times had access to and frequently
4  employed NORCA's trade secrets and confidential and proprietary information identified in
5  paragraph 14 and was and remains extremely knowledgeable about them.

6      18.    WREN, acting together with the Buying Agent, became very successful in
7  generating sales for NORCA, primarily in the boiler tube business. By 2006, they were primarily
8  responsible for generating for NORCA annual sales totaling tens of millions of dollars.

9      19.    Given this success, in or about late 2006, WREN was promoted to Executive Vice
10  President of NORCA. As part of this promotion, WREN agreed to move to the New York office,
11  and assuming the transition went smoothly, in a relatively short period of time to take over
12  management of all NORCA business operations and administration. Although WREN came to
13  New York on several occasions in or about early 2007 to house hunt and begin this transition, he
14  subsequently began dragging his feet in moving forward.

15                          Defendants' Scheme To Unfairly Compete

16      20.    On information and belief, beginning in or about 2006 or early 2007 and
17  continuing through the date of WREN's termination, WREN, individually and in concert with
18  defendants RAYBIN, LTG, the Buying Agent and others, devised a scheme unfairly and
19  unlawfully to compete against NORCA, and on information and belief, took active steps to do so
20  (ultimately forming defendant PRIMROSE).

21      21.    On information and belief, and in furtherance of this scheme unfairly to compete
22  against NORCA, and while Defendant WREN remained employed by NORCA, WREN and
23  others engaged in the following conduct, among others:

24          a.    WREN and others provided NORCA's trade secrets and confidential and
25  proprietary information to third parties. For example and without limitation, WREN provided
26
27
28
COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S: Clients Norca 8049.15 (Wren) pld rse-complaint-062907.wpd

6

1 | RAYBIN with a detailed summary of NORCA's proprietary credit insurance program described

2 | in paragraph 14c above;

3 |         b.     WREN, acting in concert with the Buying Agent and others, expressly

4 | targeted and interfered with NORCA's exclusive relationship with its principal supplier

5 | (Changwan) by contacting and soliciting Changwon, directly or through its intermediaries, and

6 | inducing Changwon to breach its exclusive relationship with NORCA;

7 |         c.     WREN and others contacted and/or solicited NORCA's other suppliers,

8 | customers and/or other third parties for their new venture;

9 |         d.     WREN and others took steps illegally to divert business away from

10 | NORCA to their new venture;

11 |         e.     On or about April 11, 2007, WREN, surreptitiously and without

12 | authorization, switched the telephone bill for the NORCA Burlingame office from NORCA's

13 | name to WREN's name personally, with the intent of converting NORCA's telephone and fax

14 | numbers over to the new venture;

15 |         e.     WREN traveled with a third party on business trips for the improper

16 | purpose of promoting defendants' new business venture;

17 |         f.     WREN took steps to exclude NORCA's president from traveling with

18 | WREN and the Buying Agent, for the purpose of soliciting suppliers for and promoting

19 | defendants' new business venture; and

20 |         g.     WREN instructed the Buying Agent to misrepresent and hide information

21 | from NORCA's president about the Buying Agent's activities.

22 |         <u>Norca Uncovers The Scheme and Defendants' Unlawful Conduct Continues</u>

23 |     22.     On or about June 6, 2007, NORCA obtained copies of emails sent between

24 | WREN, RAYBIN and the Buying Agent, which uncovered much of the unlawful conduct

25 | described above. NORCA immediately demanded that the Buyer's Agent meet with NORCA

26 | management. In apparent response, on or about June 6, 2007, defendants WREN, RAYBIN,

27 |

28 |

1  LTG and others registered the internet domain name www.primrosemetals.com. (and launched
2  said website shortly thereafter); on or about June 7, 2007, the Buyer's Agent terminated his 10-
3  year relationship with NORCA ; and on or about June 8, 2007, defendants WREN, RAYBIN,
4  LTG and others incorporated defendant PRIMROSE METALS, INC.  On information and belief,
5  WREN is an officer and principal shareholder of PRIMROSE.

6       23.    On or about June 12, 2007, NORCA terminated WREN's employment and
7  WREN thereafter continued and continues working for PRIMROSE.  Defendant PICOLOTTI,
8  the only other NORCA employee who worked in the NORCA Burlingame office at the time,
9  immediately quit and went to work for PRIMROSE.  On or about June 11, 2007, defendants
10 unlawfully converted NORCA's telephone and fax numbers to their own use, represented that
11 these numbers were PRIMROSE's and changed the telephone message from "Thank you for
12 calling Norca" to "Thank you for calling Bob Wren" or similar language.

13      24.    On information and belief, within two days thereafter, defendants, and each of
14 them, in furtherance of their unlawful scheme, prepared and disseminated to NORCA's
15 customers, suppliers and other persons a written announcement on PRIMROSE letterhead
16 headed: "Primrose Metals replaces NORCA Industrial Company."  The announcement:

17           a.    falsely represented, for example, that "Bob Wren is pleased to announce
18 that Primrose Metals has replaced NORCA Industrial Company in providing financial, operating
19 and logistical support to his customers and suppliers," when in fact the customers and suppliers
20 belonged to NORCA, not WREN, and PRIMROSE had not "replaced" NORCA;

21           b.    falsely stated that the telephone and fax numbers of PRIMROSE were
22 (650) 344-3291 and (650) 344-9241, respectively, which were the telephone and fax numbers for
23 NORCA's Burlingame office, which defendants illegally switched to PRIMROSE and which
24 bills were paid for by NORCA;

25           c.    represented that PRIMROSE was already representing mills, already had
26 "the capacity to finance [their] entire production" and was already carrying a "broad range of
27
28
COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S: Clients Norca 8049.15 (Wren) pld rse-complaint-062907.wpd

8

1  insurance and provides other financial arrangements to bridge the risks of international trade,"
2  which, if true, further evidenced the advanced and on-going nature of defendants' unlawful
3  scheme; and

4          d.      represented that PRIMROSE had the capability "to match or exceed the
5  terms offered by other trading firm," which on information and belief evidenced defendants' use
6  or intent to use NORCA's confidential and proprietary or trade secret information.

7      25.    Subsequently, defendants issued another announcement, which contained many of
8  the same representations, stated that WREN had joined PRIMROSE as a Vice President, Sales,
9  and again listed the telephone and fax numbers for PRIMROSE which belonged to NORCA.

10     26.    As a further part of defendants' scheme, defendants also used the
11 www.primrosemetals.com website to unfairly compete with NORCA. Defendants' website
12 likewise listed the telephone and fax numbers for PRIMROSE which belonged to NORCA.
13 Defendants also unlawfully copied verbatim and/or in substantially similar form a majority of the
14 text appearing on the NORCA.com website (owned by Norca) directly onto the
15 www.primrosemetals.com website.

16                  Defendants' Diversion of Norca's Business Opportunities

17     27.    Upon information and belief, in or about early June 2007, WREN deliberately
18 failed to disclose an RFQ received by NORCA, usurped it for defendants' new venture and
19 shortly thereafter submitted a quote on behalf of PRIMROSE in response to the RFQ.
20 Defendants obtained the manufacturer's quote for that RFQ from NORCA's principal supplier
21 (Changwon), in violation of NORCA's exclusive relationship with Changwon. This would not
22 have been possible without WREN, the Buying Agent or others acting in concert with them
23 having had prior and extensive communications with Changwon or its intermediaries about
24 defendants' new venture - all during the period of WREN's employment with NORCA.
25 NORCA is further informed and believes that defendants unlawfully used NORCA's trade
26
27
28
COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S: Clients Norca 8049.15 (Wren) pld rse-complaint-062907.wpd

1 | secrets and confidential and proprietary information in formulating their quote in response to the RFQ.

2 | 28.    On or about June 18, 2007, less than one week after WREN was terminated,

3 | PRIMROSE began advertising for a "Corporate Controller" on the internet. The advertisement

4 | represents that, *inter alia*, Primrose is a "heavily funded start-up metals trading company, with

5 | offices in SF, Colorado, Korea and Shanghai," that it has 8 employees and that it is "poised to

6 | grow exponentially during 2007 and 2008." If true, this further evidenced the magnitude of the

7 | unlawful actions taken to compete against NORCA while WREN was still employed by

8 | NORCA.

9 | ### The Need For Injunctive Relief

10 | 29.    Upon information and belief, defendants are unlawfully continuing to interfere

11 | with NORCA's exclusive relationship with Changwon for the boiler tube business, continuing to

12 | use NORCA's trade secrets and confidential and proprietary business information unfairly to

13 | compete against NORCA and to NORCA's competitive disadvantage, continuing to solicit

14 | Norca's, suppliers, customers and vendors, and continuing to engage in the other unlawful

15 | conduct alleged in this Complaint. Unless restrained by order of this court, defendants will

16 | continue to engage in such unlawful conduct, causing NORCA to suffer irreparable harm for

17 | which it has no adequate remedy at law.

18 |

19 | **FIRST CLAIM FOR RELIEF**

20 | **(Trade Secret Misappropriation - Civil Code Sections 3426, et. Seq.)**
**(Against Defendants WREN, PRIMROSE, RAYBIN and LTG)**

21 |

22 | 30.    Plaintiff realleges the allegations of paragraphs 1-30 hereof.

23 | 31.    Plaintiff is informed and believes, and on that basis alleges, that the actions of

24 | defendants WREN, PRIMROSE, RAYBIN, LTG and others, and each of them, constitute

25 | misappropriation of plaintiff's trade secrets under California Civil Code Section 2436 et seq.

26 |

27 |

28 |

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S:\Clients\Norca 8049.15 (Wren)\pld\rse-complaint-062907.wpd

1   32.    These trade secrets include, but are not limited to, the matters identified in
2   paragraph 14 above.

3   33.    Plaintiff's trade secrets have independent economic value as a result of not being
4   known to the public or to plaintiff's competitors. Prior to said defendants' misappropriations,
5   these trade secrets also were not known to other persons able to obtain economic value from
6   them. Their secrecy has provided and continues to provide plaintiff with a commercial
7   advantage over its competitors. Accordingly, plaintiff has made and continues to make diligent
8   efforts to protect the confidentiality and secrecy of that information.

9   34.    Said defendants, and each of them, have misappropriated plaintiff's trade secrets
10  without plaintiff's express or implied consent.

11  35.    Plaintiff is informed and believes, and on that basis alleges, that said defendants
12  have been using and, absent an injunction barring such conduct, will continue to use plaintiff's
13  trade secrets to injure and damage plaintiff.

14  36.    As a proximate result of the conduct of said defendants, plaintiff has incurred
15  damages in an amount subject to proof at trial, but in any event greater than $75,000.

16  37.    As a proximate result of said defendants' misappropriation of plaintiff's trade
17  secrets, said defendants have been and will be unjustly enriched by reducing their own costs of
18  doing business, by reducing their time to honestly and fairly develop their own competing
19  business methods and to be able to compete, by increasing their market share and by providing
20  them with other undeserved competitive advantages.

21  38.    The conduct of said defendants was and is fraudulent, malicious and oppressive,
22  and plaintiff is therefore entitled to an award of punitive damages against said defendants, under
23  California Civil Code Section 2436.3. Plaintiff also is entitled to recover its attorneys' fees
24  under California Civil Code Section 3426.4.

25
26
27
28

1

## SECOND CLAIM FOR RELIEF

### (Unfair Business Practices - Cal. Bus. & Prof. Code Section 17200 et. seq.)

### (Against all Defendants)

39.    Plaintiff realleges the allegations of paragraphs 1-30 hereof.

40.    The acts of defendants, and each of them, as alleged above, constitute unlawful, unfair and fraudulent business acts or practices within the meaning of California Business and Professions Code Section 17200 et seq.

41.    Plaintiff is informed and believes, and on that basis alleges, that said defendants have continued to engage in the conduct complained of herein and, unless restrained and enjoined, said defendants will continue to do so, causing plaintiff to suffer further irreparable harm. Plaintiff has no adequate remedy at law for said defendants' wrongful conduct, and money damages cannot fully compensate plaintiff for the injury and damages to its business. Plaintiff is therefore entitled to injunctive relief prohibiting said defendants from continuing to engage in such unlawful practices.

42.    Plaintiff also is entitled to restitution and disgorgement of any profits resulting the unlawful, fraudulent and unfair business practices of said defendants.

43.    The actions of defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### (Against Defendants WREN, PRIMROSE, RAYBIN and LTG)

44.    Plaintiff realleges the allegations of paragraphs 1-30 hereof.

45.    By reason of his status as an officer of plaintiff NORCA, defendant WREN owed fiduciary duties to plaintiff.

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S:\Clients\Norca\8049.15 (Wren)\pld\rse-complaint-062907.wpd

12

1    46.    Defendant WREN, in concert with defendants PRIMROSE, RAYBIN, LTC and

2 others, and each of them, breached such fiduciary duties in the manner set for above.

3    47.    Plaintiff is entitled to injunctive relief against said defendants to enjoin the further

4 and continuing violations of such fiduciary duties.

5    48.    As a proximate result of such breaches, plaintiff has been damaged in amounts

6 not yet fully ascertained, but in excess of $75,000.

7    49.    The actions of said defendants, and each of them, were and are fraudulent,

8 malicious and oppressive, and plaintiff is entitled to recover punitive damages against said

9 defendants.

10    **FOURTH CLAIM FOR RELIEF**

11    **(Breach of Duty of Loyalty)**

12    **(Against Defendants WREN, PRIMROSE, RAYBIN and LTG)**

13    50.    Plaintiff realleges the allegations of paragraphs 1-30 hereof.

14    51.    By virtue of his employment with plaintiff NORCA, defendant WREN owed a

15 duty of loyalty to NORCA.

16    52.    Plaintiff is informed and believes, and on that basis alleges, that WREN, in

17 concert with defendants PRIMROSE, RAYBIN and LTG and others, and each of them, breached

18 such duty of loyalty by the conduct described in this Complaint.

19    53.    Unless said defendants are retained by appropriate injunctive relief, plaintiff will

20 suffer further immediate and irreparable harm for which there is no adequate remedy at law.

21    54.    Said defendants will be unjustly enriched in an amount that is separate and

22 distinct from plaintiff's damages.

23    55.    As a proximate result of said defendants' conduct, plaintiff has been damaged in

24 amounts not yet fully ascertained, but in excess of $75,000.

25    56.    The actions of defendants, and each of them, were and are fraudulent, malicious

26 and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

27

28

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S:\Clients Norca\8049.15 (Wren) pld rse-complaint-062907.wpd

13

1

## FIFTH CLAIM FOR RELIEF

2

### (Intentional Interference with Advantageous Business Relationships)

3

### (Against Defendants WREN, PRIMROSE, RAYBIN and LTG )

4      57.     Plaintiff realleges the allegations of paragraphs 1-30 hereof.

5      58.     Defendants WREN, PRIMROSE, RAYBIN and LTG and others, and each of

6  them, were at all times aware that NORCA had, over a period of time and at a  considerable

7  expenditure of time, effort and money, developed advantageous business relationships with

8  specific customers and suppliers.  These relationships included, among others, a relationship

9  whereby NORCA was the exclusive representative for Changwon to Norca's U.S.- based

10  customers for delivery to their worldwide fabrication facilities.

11      59.     With full knowledge of such advantageous business relationships, each of them,

12  and with the intent to wrongfully interfere with such relationships, said defendants engaged in the

13  conduct herein alleged.  Plaintiff is informed and believes and on that basis alleges that such

14  conduct has actually disrupted and will continue to disrupt plaintiff's business relationships with

15  its suppliers and customers.

16      60.     As a proximate result of such unlawful conduct, plaintiff has sustained and will

17  continue to sustain damages in amounts not yet fully ascertained, but in excess of $75,000.

18      61.     The actions of defendants, and each of them, were and are fraudulent, malicious

19  and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

20

## SIXTH CLAIM FOR RELIEF

21

### (Intentional Interference with Prospective Economic Advantage)

22

### (Against Defendants WREN, PRIMROSE, RAYBIN and LTG)

23      62.     Plaintiff realleges the allegations of paragraphs 1-30 hereof.

24      63.     An economic relationship at all times relevant existed between plaintiff and its

25  customers and suppliers, and each of them, respectively.

26

27

28

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S: Clients Norca 8049.15 (Wren) pld rse-complaint-062907.wpd

64.     Upon information and belief, defendants WREN, PRIMROSE, RAYBIN and LTG, and each of them, knew of the existence of such relationships.

65.     Said defendants intentionally engaged in wrongful conduct designed to interfere with or disrupt such relationships.

66.     Said defendants intended to interfere or disrupt such relationships by luring plaintiff's customers and suppliers to do business with said defendants based upon the unfair use of plaintiff trade secrets, plaintiff's confidential and proprietary information and defendants' other unlawful conduct described in this Complaint.

67.     Said defendants actually interfered and disrupted such relationships.

68.     As a proximate result of such unlawful conduct, plaintiff has sustained and will continue to sustain damages in amounts not yet fully ascertained, but in excess of $75,000.

69.     The actions of defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

**SEVENTH CLAIM FOR RELIEF**

**(Wrongful Misappropriation of Employer Property - Cal. Labor Code Section 2860)**

**(Against all Defendants WREN, PRIMROSE, RAYBIN and LTG)**

70.     Plaintiff realleges the allegations of paragraphs 1-30 hereof.

71.     All documents and other information, including without limitation, plaintiff NORCA's trade secrets and confidential and proprietary information, which defendant WREN acquired by virtue of his employment with plaintiff, belong to plaintiff.

72.     On information and belief, defendant WREN, in concert with the other defendants, wrongfully misappropriated such property in violation of California Labor Code Section 2860.

73.     As a proximate result of such unlawful conduct, plaintiff has sustained and will continue to sustain damages in amounts not yet fully ascertained, but in excess of $75,000.

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S: Clients Norca 8049.15 (Wren) pld rse-complaint-062907.wpd

1    74.    The actions of defendants, and each of them, were and are fraudulent, malicious

2    and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

3                                              **PRAYER**

4    WHEREFORE, plaintiff prays for relief against defendants, and each of them, as follows:

5    1.    The court issue a temporary, preliminary and permanent injunction enjoining

6    defendants, and each of them, and each of their agents, servants, employees, attorneys and

7    entities working with defendants, and those in active concert and participation with them, from:

8        a.    contacting, obtaining quotes, contracting with, accepting deliveries from or

9            doing business with Changwon (now "Posco Specialty Steel Co. Ltd.") directly or

10           through intermediaries;

11       b.    disseminating, disclosing or using for any purpose plaintiff's confidential

12           and proprietary information and/or trade secrets including, but not limited to:

13               i.    NORCA's pricing information, pricing strategies, pricing

14                   formulation methods and profit margins;

15               ii.   NORCA's proprietary credit insurance program;

16               iii.  The list of manufacturing facilities used by NORCA and the

17                   specific contact person at each; the identities of the intermediaries

18                   used by NORCA to contact and negotiate with each such facility

19                   and the specific contact person for each; the credit, payment terms,

20                   shipping, insurance and other requirements demanded or accepted

21                   by each such facility; and NORCA's evaluation of the expertise,

22                   competence and reliability of each facility to manufacture particular

23                   types of products to specification in a timely fashion;

24               iv.   The list of NORCA's customers and the specific contact names for

25                   each, the product specifications and requirements for each and

26

27

28
COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S:\Clients\Norca 8049.15 (Wren) pld\rse-complaint-062907.wpd

16

1    NORCA's working knowledge of the decision-making process for

2    each customer;

3    v.    NORCA's proprietary software, which contains, among other

4    things, NORCA's entire "trading package" with respect to the non-

5    boiler tube business.

6    c.    contacting or soliciting the companies on NORCA's confidential list of

7    customers and suppliers;

8    d.    representing that defendants, or any of them, have "replaced" NORCA or

9    referring to NORCA's customers and/or suppliers as defendants';

10    e.    quoting, entering into or performing any contract derived from a request

11    for quote pre-dating defendant WREN's termination;

12    f.    using the telephone and facsimile numbers (650) 344-3291 and (650) 344-

13    9241 or representing that these numbers belong to defendants;

14    g.    publishing any of the text appearing on www.NORCA.com or language

15    substantially identical thereto on any website, including but not limited to

16    www.primrosemetals.com, or in any of defendants' advertisements or

17    promotional materials;

18    h.    disposing of or destroying any documents, records, files, proposals,

19    invoices, bills, customer lists, contact lists, ledgers, computer files,

20    computer discs, correspondence or other information sources, which

21    contain or may contain any of defendants' information regarding

22    solicitation or servicing of NORCA's customers or suppliers or any of

23    NORCA's confidential and proprietary information and/or trade secrets set

24    forth in subsection (b) above or defendants' use or dissemination thereof;

25    2.    Compensatory damages in an amount to be determined, but in excess of

26    $75,000;

27

28

1     3.   Punitive damages;

2     4.   Reasonable attorneys' fees, litigation expenses, and costs as provided by

3  law;

4     5.   Pre-judgment interest; and

5     6   Such other and further relief as this Court may deem just and proper.

DATED: June 29, 2007        PHILLIPS, ERLEWINE & GIVEN LLP

By:_____
R. SCOTT ERLEWINE
Attorneys for Plaintiff

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and issues.

DATED: June 29, 2007        PHILLIPS, ERLEWINE & GIVEN LLP

By:_____
R. SCOTT ERLEWINE
Attorneys for Plaintiff

COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No.

S: Clients\Norca 8049.15 (Wren)\pld\rse-complaint-062907.wpd

18