```
JOHN S. CHA, State Bar No. 129115
    jcha@srclaw.com
BRENT M. FINCH, State Bar No. 202866
    bfinch@srclaw.com
STONE ROSENBLATT & CHA
21550 Oxnard Street, Main Plaza, Suite 200
Woodland Hills, California  91367
Telephone:  (818) 999-2232
Facsimile:   (818) 999-2269

Attorneys for Defendants
ROBERT WREN and VICTORIA PICOLOTTI
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORCA INDUSTRIAL, LLC, a New York Limited Liability Company,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>ROBERT WREN, an individual; PRIMROSE METALS, INC., a California corporation; RICHARD RAYBIN, an individual; LIFETIME CAPITAL GROUP, an unknown entity; VICTORIA PICOLOTTI, an individual,<br><br>　　　　　　　Defendants. | Case No. C 07 3425 EDL<br><br>*Ex Parte Date:*　July 3, 2004<br>*Ex Parte Time:*　3:30 p.m.<br>*Ex Parte Dep't.:*　9<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S** *EX PARTE* **APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>*Complaint Filed:*　June 29, 2007 |

### I.　INTRODUCTION

This lawsuit is nothing more than a misguided, overzealous, and illegitimate effort to eradicate lawful competition by Defendant Robert Wren ("Wren")[1]. Wren was a former key employee of Plaintiff Norca Industrial, LLC ("Norca"). He was terminated from Norca, and he is now aggressively pursuing his profession and livelihood based on his knowledge and experience gained over 20+ years in the

---

[1] Defendant Victoria Picolotti, for all relevant times, is Wren's executive assistant and has no direct involvement in Norca's allegations. Wren has asked twice now that she be dismissed from this lawsuit. Norca has not replied.

1

OPPOSITION TO EX PARTE APPLICATION FOR TRO AND PRELIMINARY INJUNCTION

boiler tube industry. The boiler tube business was a book of business Wren brought to Norca. Prior to March 2000, Norca did not have a boiler tube business at all, and Norca did not conduct business in South Korea. With what he brought to Norca, Wren is lawfully seeking the opportunities he furthered at Norca, but which he is now pursuing outside of Norca following his termination.

Norca's application primarily seeks to prevent Wren from doing business with Changwon, a boiler tube manufacturer in Korea with whom Norca claims to have an "exclusive" relationship. Not only does Norca have no evidence of any such exclusive relationship with Changwon, it would be impossible for one to exist given the complicated and competitive nature of the Korean boiler tube manufacturers. [*See* Wren Decl, at paragraph 7]. Moreover, Norca represents various manufacturers located in China.

Norca's *Ex Parte* Application fails to establish the essential elements for the issuance of a Temporary Restraining Order ("TRO"), specifically, immediate and irreparable harm and the likelihood of success on the merits [*FRCP* 65(b)], based on the following:

1. Norca has not and cannot establish through actual evidence that the information it alleges Wren misappropriated is confidential and a protectable trade secret belonging to Norca. Norca's application is based entirely on conclusions and "because-I-said-so" allegations.

2. Wren never entered into a non-solicitation agreement with Norca. Norca's after-the-fact attempt to enjoin him from fairly and lawfully competing in the business he's developed over 20+ years is without merit.

3. Plaintiff's proposed TRO is unconscionably overbroad. Norca's proposal serves to do nothing more than force Wren to sever personal friendships and longstanding business relationships he developed well prior to joining Norca, unfairly restrict his ability to earn his living, and unfairly restrict his ability to service clients who have contacted him of their own choice.

Norca's *Ex Parte* Application should be denied because Norca fails to show that it would likely prevail on the merits and because Norca cannot show any immediate irreparable harm.

## II. NORCA'S REQUEST FOR A TRO IS UNSUPPORTED BY ANY EVIDENCE AND IS BASED ENTIRELY ON CONCLUSIONS; NORCA HAS FAILED TO SATISFY ITS BURDEN FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER.

A party seeking a temporary restraining order must make a persuasive showing of irreparable harm and likelihood of prevailing on the merits. *New Motor Vehicle Bd. Of California v. Orrin W. Fox Co.* (1977) 98 S.Ct. 359, 434 U.S. 1345, 54 L.Ed.2d 439. A TRO may be granted only when a plaintiff demonstrates substantial likelihood of success on the merits, that irreparable injury will result in the absence of the requested relief, that no other parties will be harmed if temporary relief is granted, and that public interest favors entry of a temporary restraining order. *FRCP* 65(b); *The Nation Magazine v. Dept. of State* (D.D.C. 1992) 805 F.Supp. 68; see also *Korean Philadelphia Presbyterian Church v. California Presbytery* (2000) 77 Cal.App.4th 1069, 1084 (the threat of "irreparable harm" must be *imminent*, as opposed to the mere possibility of harm some time in the future).[2] In short, a TRO is an extraordinary remedy that will be granted only in cases where the need for immediate relief is clear. [*See* CA Practice Guide, Federal Civil Procedure Before Trial (2007 ed.), at 13:6]. Here, Norca can satisfy none of these criteria.

---

[2] Norca concedes in its Complaint that it first discovered the alleged wrongdoings of Wren on June 6, 2007, but it waited almost a month to bring this application, evidencing that exigent circumstances do not exist.

### A. Norca Has Not Demonstrated The Existence Of Any Protectable Trade Secret.

California has adopted, with minor modifications, the Uniform Trade Secrets Act, at *Civil Code* Section 3426.1 *et seq.* ("UTSA"). *AT&T Comms. of California, Inc. v. Pacific* (9th Cir. 2000) 238 F.3d 427. Misappropriation requires "acquisition" or "disclosure or use" of "a trade secret," under *Civil Code* Section 3426.1(b). Thus, before the Court determines whether a defendant committed misappropriation, it must determine whether the information at issue qualifies as a trade secret. *MAI Systems Corp. v. Peak Computer, Inc.* (9th Cir. 1993) 991 F.2d 511, 520. Norca must establish, with actual evidence, that Wren has been unjustly enriched by the improper appropriation, use, or disclosure of a "trade secret." The UTSA defines a "trade secret" as information, including a formula, pattern, compilation, program, device, method, technique, or process that:

(1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Measured by this two-prong test, Norca's alleged confidential information does not meet the statutory requirements. Norca's trade secret misappropriation claim rests upon the client identities and client-specific information allegedly belonging to Norca. These allegations, made almost entirely on information and belief, are unsupported by any actual evidence. Instead, the trade secret claim is based entirely on conclusions and "because-I-said-so" allegations.

The burden of proof on the existence of a trade secret rests with the party asserting it. *Cf. Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co.* (1985) 168 Cal.App.3d 455, 463. Norca never takes up that burden. The application simply

concludes that its so-called client and prospective client lists and its purportedly proprietary software are "trade secrets." That is not the case.

At this point, Norca's claims are based on suspicions and conjecture. Norca fails to proffer any evidence of (1) the existence of a protectable trade secret, (2) that it was misappropriated, and (3) that Wren profited from its unlawful use.

B. **Norca's Supposed Confidential Information About Pricing, Shipping, and Manufacturing Facilities, Including Information Regarding Changwon, Is All Publicly Available As Current And Detailed Information On The Internet.**

Norca cannot overcome the fact that all of the information it claims is a protectable trade secret is, in reality, broadly available through the Internet. [*See* Wren Decl., at paragraph 17.] Wren uses the Internet extensively as his chief market resource for information identifying and evaluating both potential buyers and sellers of boiler tube products. Simply, the Internet contains the specific information that Norca presumes to call its own "trade secrets." Wren's business is not conducted by reference to any documents pilfered from Norca. Rather, because such information is either generally known to the public or is readily ascertainable to persons in the boiler tube business, it is not a protectable trade secret. *American Paper & Packaging Products, Inc. v. Kurgan* (1986) 183 Cal.App.3d 1318, 1326 (customer lists and related information not trade secret where "lists of customers who operate manufacturing concerns and need shipping supplies to ship their products to market, may not be generally known to the public, they certainly would be known or readily ascertainable to other persons in the shipping business.")

Further, with the Internet, it does not, as Norca presumes, take years and expensive efforts to build and maintain a client base. To the contrary, with the tools of the Internet and the knowledge gained over 20+ years of experience in the boiler tube industry, all useful information is *immediately accessible.* Norca cannot seek to snuff-out legitimate competition by insisting that it holds a protectable trade

secret to this publicly-available information. Norca is fooling itself and inviting the Court to indulge in its false claims all to the end of improperly restraining its competition. Just as Norca developed its boiler tube business in Korea by hiring Wren, when Wren brought his $22-million book of business to Norca in March 2000, Wren should be able to conduct his business by utilizing his 20+ years of experience, knowledge, and contacts generated during that time.

### C. Norca Has Not Demonstrated Reasonable Efforts At Maintaining Secrecy As To Any Information It Claims Is A Trade Secret.

Norca has made no credible showing that the purported trade secrets are the subject of efforts that are reasonable under the circumstances to maintain its secrecy. In fact, Norca has taken virtually no steps to safeguarded its alleged client "database" it contends is among its most precious secrets. Specifically, Norca does not have its employees sign any trade secret acknowledgement agreements or any non-disclosure agreements. Norca allows its employees to remotely access its network, which purportedly contains all of its precious trade secrets, from any public location, like a Wifi-available coffee shop, for example. Tellingly, Norca has not produced its allegedly protected "client list," presumably because none exists.

### III. WREN HAS NOT UNLAWFULLY SOLICITED ANY CUSTOMERS OF NORCA, INCLUDING CHANGWON.

Norca further complains that Wren has contacted some of the customers with whom he worked while employed by Norca and, therefore, he must have misappropriated Norca's client information. Nonsense. Wren has not diverted any sales from Norca. To the contrary, he has directed customers with existing orders as of the date of his termination from Norca to communicate directly with Norca. [*See* Wren Decl., at paragraph 13]. Further, Wren did not initiate calls or solicit Norca's customers. Rather, these customers and potential customers contacted

Wren directly after learning that he was terminated by Norca, a fact that Norca's Selim Bahar was not abashed about publishing internationally.

Norca additionally ignores the well-established law that *"[o]ne may do business with a former employer's customers with whom one became personally acquainted and developed a business relationship while formerly employed."* Moss, Adams & Co. v. Shilling (1986) 179 Cal.App.3d 124, 128-29 (citations omitted) (emphasis added). As the Court of Appeal noted,

> "in *Avocado Sales Co.* it was lawful for a salesman to sell avocados to retail customers whom the salesman had serviced for a former employer, 'thereby making personal friends and acquiring a personal knowledge of his customers. . . .' [Citation.] The court quoted a New York decision for the proposition that '*Equity has no power to compel a man who changes employers to wipe clean the slate of his memory.*' [Citations.]"

Moss, Adams & Co., 179 Cal.App.3d at 129 (emphasis added).

Here, Wren developed and established all of his business contacts long before he became employed by Norca. [*See* Wren Decl. at paragraphs 3-5]. Norca cannot lay claim to Wren's knowledge and expertise developed prior to his tenure at Norca. Norca, also, cannot force Wren to undergo a lobotomy or other procedure whereby his memory and knowledge are completely erased just because he was terminated from Norca's employment or just because he elected to fairly and lawfully compete with Norca in the boiler tube business.

Further, the announcement that Wren delivered to his business friends and longtime business contacts is not a solicitation. While poorly worded, which was shortly thereafter changed to correct the poor wording, it was sent by e-mail to approximately 30 business friends whom Wren developed before joining Norca.

IV.  **NORCA'S PROPOSED TRO IS UNCONSCIONABLY OVERBROAD.**

Norca's proposed injunction is improper because of its after-the-fact nature. The proposed injunction is not restricted to protection of trade secrets but seeks to prohibit solicitation of *any* of Norca's current or "prospective" clients on behalf of

7

any competitor. Such a broad limitation is unlawful. *Gordon Termite Control v. Terrones* (1978) 84 Cal.App.3d 176, 179 (refusing to enforce an agreement prohibiting an employee from calling on any accounts he had called on while with former employer, finding "knowledge of potential customers . . . is not a trade secret . . . .")

Specifically, taking Norca's proposed TRO item by item:

(1)  Wren cannot be enjoined from *lawfully* "contacting, obtaining quotes, contracting with, accepting deliveries from, or doing business with Changwon" or any other vendor.

(2)  None of the information that Norca seeks to prevent Wren from "disseminating, disclosing, or using" is a protectable trade secret.

(3)  Because Norca has no evidence it maintains a "confidential list of customers and suppliers," the Court cannot enjoin Wren from contacting or soliciting these unidentified companies.

(4)  Wren already revised and re-sent the announcement that previously stated Primrose Metals, Inc. (which is not Wren's company) "replaced" Norca.

(5)  Wren has directed all customers of Norca predating his termination from Norca to communicate directly with Norca. He has not diverted any orders.

(6)  Wren already changed the telephone numbers in his new office.

In short, Norca cannot now seek to impose limitations on Wren's post-employment activities that it could have sought to impose by contract during his employment with Norca. Otherwise, Norca would obtain the benefit of a contractual provision it did not pay for. On the other hand, Wren will be unfairly bound by a court-imposed contract provision without having had the opportunity to negotiate terms or obtain consideration. Instead of bargaining for limited, possibly valid, non-solicitation and non-compete contractual limitations, Norca seeks to impose through its proposed injunction overly broad limitations on Wren after the fact.

In addition, if Wren is restricted in his business activities, legitimate competition will be hampered. Customers will not have the benefit of several traders from whom they can obtain quotes on boiler tubes from various Asian manufacturers. By allowing free competition, competitiveness and customer benefits are achieved.

## V.  IF THE COURT IS INCLINED TO ISSUE A TEMPORARY RESTRAINING ORDER, IT SHOULD IMPOSE A SUBSTANTIAL BOND

No party may be granted a TRO or preliminary injunction without first posting security "*in such sum as the court deems proper* for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." *FRCP* 65(c) (emphasis added). Although the amount of the bond is discretionary, the court's failure to require a bond upon issuing injunctive relief is reversible error. *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.* (4th Cir. 1999) 174 F.3d 411, 421.

The purpose of the bond requirement is threefold: (1) to discourage the moving party from seeking preliminary injunctive relief to which it is not entitled; (2) to assure the court that if it errs in granting such relief the moving party rather than the wrongfully-enjoined party will bear the cost of the error; and (3) to provide a wrongfully-enjoined party a source from which it may readily collect damages without further litigation and without regard to the moving party's solvency. *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.* (9th Cir. 1994) 16 F.3d 1032, 1037. The amount of the bond will not be reviewed on appeal except for abuse of discretion. *GoTo.com, Inc. v. Walt Disney Co.* (9th Cir. 2002) 202 F.3d 1199, 1211.

Wren will be substantially harmed by a TRO. Specifically, he would be prevented from conducting his business and earning a living. A bond in the amount

of at least $1,000,000 should be imposed pending a hearing on the OSC re Preliminary Injunction.

## VI. CONCLUSION

Based on the foregoing, Defendants Wren and Picolotti respectfully request that the Court deny Norca's *Ex parte* application for a TRO. If, however, the Court grants the application, the Court should impose a bond in the amount of at least $1,000,000 pending a hearing on the OSC re Preliminary Injunction.

Dated: July 3, 2007

STONE ROSENBLATT & CHA
A Professional Law Corporation

By: _____
Brent M. Finch
Attorneys for Robert Wren and
Victoria Picolotti

*Norca Industrial, LLC v. Robert Wren, et al.*

PROOF OF SERVICE
STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 21550 Oxnard Street, Main Plaza, Suite 200, Woodland Hills, California.

On **July 3, 2007**, I served the foregoing document described as:

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

ON ALL INTERESTED PARTIES in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at: WOODLAND HILLS, CALIFORNIA addressed as follows:

R. Scott Erlewine, Esq.
Meagan McKinley-Ball, Esq.
Phillips, Erlewine & Given, LLP
One Embarcadero Center, Ste. 2350
San Francisco, CA 94111
(415) 398-0900
(415) 398-0911 - Fax
rse@phillaw.com

Stuart C. Clark, Esq.
Carr & Ferrell, LLP
2200 Geng Road
Palo Alto, CA 94303
(650) 812-3415
(812) 812-3444 - Fax
clark@carr-ferrell.com

[ ]   (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Woodland Hills, California.

[x]   (BY E-MAIL) I caused such document to be e-mailed to the addressee.

[ ]   (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

[ ]   (BY EXPRESS MAIL, CCP 1013(c,d) I caused such envelope with postage thereon fully prepaid to be placed in the box regularly maintained by the express service carrier, Federal Express, at 21550 Oxnard Street, Suite 200, Woodland Hills, California, copies of the routing slips attached hereto.

[X]   Executed on **July 3, 2007** at Woodland Hills, California.

[X]   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]   (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*CHANTAL GONZALEZ*