R. SCOTT ERLEWINE (State Bar No. 095106)
MEAGAN MCKINLEY-BALL (State Bar No. 245375)
PHILLIPS, ERLEWINE & GIVEN LLP
One Embarcadero Center, Suite 2350
San Francisco, California 94111
Telephone: (415) 398-0900
Facsimile: (415) 398-0911

Attorneys for Plaintiff
NORCA INDUSTRIAL, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORCA INDUSTRIAL, LLC, a New York Limited Liability Company,<br><br>           Plaintiff,<br><br>v.<br><br>ROBERT WREN, an individual; PRIMROSE METALS, INC., a California corporation; RICHARD RAYBIN, an individual; LIFETIME CAPITAL GROUP, an unknown entity; VICTORIA PICOLOTTI, an individual; PRIMROSE ALLOYS, INC., a California corporation; CRAIG YARDE, an individual; STEVE SONG, an individual.<br><br>           Defendants. | CASE NO.   C 07-3425 WHA<br><br>**FIRST AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND DAMAGES: MISAPPROPRIATION OF TRADE SECRETS, UNFAIR COMPETITION, BREACH OF FIDUCIARY DUTY, BREACH OF DUTY OF LOYALTY, INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, MISAPPROPRIATION OF EMPLOYER PROPERTY**<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. This is an action for injunctive relief and damages arising out of one or more defendants' misappropriation of trade secrets and confidential and proprietary information, unfair competition, breach of fiduciary duty, breach of duty of loyalty, intentional interference with advantageous business relations and prospective economic advantage, and misappropriation of employer property.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court over the subject matter of this action is predicated on 28 USC Section 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs.

3. Venue is proper in this Court pursuant to 28 USC §1391(a) and is founded on the fact that a substantial part of the events on which the claims are based is the subject of this action.

**THE PARTIES**

4. Plaintiff NORCA INDUSTRIAL LLC (hereafter "NORCA") is, and at all times relevant was, a limited liability company duly organized and existing under the laws of the State of New York, having its principal place of business in the State of New York.

5. Defendant ROBERT WREN (hereafter "WREN") is an individual, who is, and at all times relevant was, domiciled in the State of California.

6. Defendant PRIMROSE METALS, INC. (hereafter "PRIMROSE METALS") is, and at all times relevant was, a corporation purportedly organized and existing under the laws of the State of California, having its principal place of business in Burlingame, California.

7. Defendant PRIMROSE ALLOYS, INC. (hereafter "PRIMROSE ALLOYS") is, and at all times relevant was, a corporation purportedly organized and existing under the laws of the State of California, having its principal place of business in Burlingame, California.

8. Defendant CRAIG YARDE (hereafter "YARDE") is an individual, who on information and belief is, and at all times relevant was, domiciled in the State of Colorado.

FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

2

9. Defendant STEVE SONG (hereafter "SONG") is an individual, who is, and at all times relevant was, a citizen of a foreign state, namely South Korea.

10. Defendant RICHARD RAYBIN (hereafter "RAYBIN") is an individual, who is, and at all time relevant was, domiciled in the State of California.

11. Defendant LIFETIME CAPITAL GROUP (hereafter 'LTG") is a business organization, form unknown, having its principal place of business in the State of California. On information and belief, defendant RAYBIN is, and at all times relevant was, the managing director of LTG.

12. Defendant VICKIE PICOLOTTI (hereafter "PICOLOTTI") is an individual, who is, and at all times relevant was, domiciled in the State of California.

13. NORCA is informed and believes that at all times mentioned herein, each of the defendants was acting as the co-conspirator, joint venturer, agent, servant, employee, employer or alter ego of each of the other defendants and in acting or failing to act as alleged in this Complaint, each defendant was acting within the course and scope of such conspiracy, joint venture, agency, service or employment and with the permission, consent, approval and ratification of each of the other defendants. NORCA is informed and believes that at all relevant times each of the defendants was acting in concert with each of the other defendants towards a common goal.

**BACKGROUND**

14. NORCA is and at all times relevant was primarily engaged in selling specialized "boiler tubes" ordered for customer specifications in the power generation business, and selling through distributors industrial pipes, tubing, valves, fittings and flanges. NORCA is one of North America's leading providers of these products. The claims in this case primarily relate to the boiler tube business. Given that boiler tubes are used to construct or refurbish large power generation facilities, each order often ranges between $1Million - $3.5 Million.

FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

3

The Boiler Tube Business

15.     The "boiler tube" business is complex and the barriers to entry are substantial. NORCA contracts with a foreign manufacturer to have the boiler tubes specially manufactured to the customer's specifications (most of which are different) and then imports the tubes to the United States or elsewhere for sale and delivery to the customer. This involves, for example, orders to specifications, foreign manufacturers, foreign and domestic buyers, substantial capital and financing requirements (because NORCA purchases the goods), and a myriad of logistical problems such as foreign quality control, customs, shipping and international insurance. It requires substantial expertise and having established, long-term relationships with a network of manufacturers (and their intermediaries) located in Asia, customers and other providers (e.g., insurance companies, banks, shippers, freight forwarders, customs brokers). NORCA also bears the potential risk that a customer will default on payment for multi-million dollar order(s).

NORCA's Critical Manufacturer in Korea

16.     A major key to NORCA's success and profitability is, and at all times relevant was, its valuable relationship with a particular manufacturer, Changwon (now known as "Posco Specialty Steel Co. Ltd." - hereafter "Changwon") located in Korea. Changwon is and at all times was Norca's principal manufacturer for boiler tubes. Until the recent actions of defendants as described below, Norca was the exclusive representative for Changwon to Norca's U.S. based customers for delivery to their worldwide fabrication facilities. This type of arrangement is a standard practice followed by Korean mills. Norca, Changwon and Changwon's intermediaries' personnel frequently visited Norca customers together to market Norca's boiler tube products.

Norca's Trade Secrets and Confidential and Proprietary Information

17.     NORCA's success and profitability is and at all times relevant was dependent in significant part upon maintaining the confidentiality of its trade secrets and confidential, proprietary information. This includes, for example and without limitation, the following:

    a.     NORCA's pricing information, pricing strategies, pricing formulation methods and profit margins;

FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

4

      b.    NORCA's proprietary credit insurance program. (This program was developed to allow NORCA to transact business with potential customers which NORCA deems to be credit risks to guard against the possibility that such customers will default on their payment obligations, was extremely difficult to obtain, is unique to the industry, very complicated and took months to negotiate.)

      c.    The identity of the complete list of manufacturing facilities used by NORCA and the specific contact person at each; the identities of the intermediaries used by NORCA to contact and negotiate with each such facility and the specific contact person for each; the credit, payment terms, shipping, insurance and other requirements demanded or accepted by each such facility; and NORCA's evaluation of the expertise, competence and reliability of each facility to manufacture particular types of products to specification in a timely fashion.

      d.    The identity of NORCA's customers and the specific contact names for each, the product specifications and requirements for each and NORCA's working knowledge of the decision-making process for each customer.

      e.    NORCA's proprietary software, which contains, among other things, NORCA's entire "trading package" with respect to the non-boiler tube business. (This software is used by NORCA to, *inter alia*, analyze worldwide supplier and market information and formulate quotes on its broad distributor line of products.)

18.    NORCA has spent years and significant company resources to develop, establish and maintain the information, materials and relationships set forth in paragraph 17, which are not known to the general public nor within the industry. They enable NORCA to operate quickly, effectively and competitively in the marketplace. NORCA places the utmost value on its trade secrets and other confidential proprietary information. NORCA takes, and at all relevant times took, reasonable steps to ensure the secrecy of its trade secrets and other proprietary information by, among other things, limiting access to such information to those employees who need to know the information.

FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

5

...

### Robert Wren

19. Beginning in approximately 1998, NORCA hired defendant WREN as a vice president to sell products on behalf of NORCA to NORCA's customers. At the time of his hiring, WREN resided in the State of California, and for convenience sake, SVF, a NORCA affiliate, opened a small office in Burlingame, California for WREN and one or more other NORCA employees to work from. As part of his NORCA sales duties, WREN principally worked with one particular buying agent, Defendant SONG, who was associated with NORCA and located in Korea.

20. As part of his employment, WREN at all times had access to and frequently employed NORCA's trade secrets and confidential and proprietary information identified in paragraph 17 and was and remains extremely knowledgeable about them.

21. WREN, acting together with SONG, became very successful in generating sales for NORCA, primarily in the boiler tube business. By 2006, they were primarily responsible for generating for NORCA annual sales totaling tens of millions of dollars.

22. Given this success, in or about late 2006, WREN was promoted to Executive Vice President of NORCA. As part of this promotion, WREN agreed to move to the New York office, and assuming the transition went smoothly, in a relatively short period of time to take over management of all NORCA business operations and administration. Although WREN came to New York on several occasions in or about early 2007 to house hunt and begin this transition, he subsequently began dragging his feet in moving forward.

### Defendants' Scheme To Unfairly Compete

23. On information and belief, beginning in or about 2006 or early 2007 and continuing through the date of WREN's termination, WREN, individually and in concert with defendants SONG, YARDE, RAYBIN, LTG and others, devised a scheme unfairly and unlawfully to compete against NORCA, and on information and belief, took active steps to do so (ultimately forming defendant PRIMROSE METALS, and then on information an belief without

FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

6

the participation of RAYBIN and LTG, defendant PRIMROSE ALLOYS). On information and belief, YARDE was a financier for the scheme.

24. On information and belief, and in furtherance of this scheme unfairly to compete against NORCA, and while defendant WREN remained employed by NORCA, WREN, SONG and others engaged in the following conduct, among others:

  a. WREN and others provided NORCA's trade secrets and confidential and proprietary information to third parties. For example and without limitation, WREN provided RAYBIN with a detailed summary of NORCA's proprietary credit insurance program described in paragraph 17c above;

  b. WREN, acting in concert with SONG and others, expressly targeted and interfered with NORCA's exclusive relationship with its principal supplier (Changwon) by contacting and soliciting Changwon, directly or through its intermediaries, and inducing Changwon to breach its exclusive relationship with NORCA;

  c. WREN and others contacted and/or solicited NORCA's other suppliers, customers and/or other third parties for their new venture;

  d. WREN and others took steps illegally to divert business away from NORCA to their new venture;

  e. On or about April 11, 2007, WREN, surreptitiously and without authorization, switched the telephone bill for the NORCA Burlingame office from NORCA's name to WREN's name personally, with the intent of converting NORCA's telephone and fax numbers over to the new venture;

  e. WREN traveled with a third party on business trips for the improper purpose of promoting defendants' new business venture;

  f. WREN took steps to exclude NORCA's president from traveling with WREN and SONG, for the purpose of soliciting suppliers for and promoting defendants' new business venture; and

FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

7

1     g.    WREN instructed SONG to misrepresent and hide information from NORCA's president about SONG's activities.

### Norca Uncovers The Scheme and Defendants' Unlawful Conduct Continues

25.    On or about June 6, 2007, NORCA obtained copies of emails sent between WREN, RAYBIN and SONG, which uncovered much of the unlawful conduct described above. NORCA immediately demanded that SONG meet with NORCA management. In apparent response, on or about June 6, 2007, defendants WREN, RAYBIN, LTG and others registered the internet domain name www.primrosemetals.com. (and launched said website shortly thereafter); on or about June 7, 2007, SONG terminated his 10-year relationship with NORCA; and on or about June 8, 2007, defendants WREN, RAYBIN, LTG and others incorporated defendant PRIMROSE METALS, INC.

26.    On or about June 12, 2007, NORCA terminated WREN's employment and WREN thereafter continued working for PRIMROSE METALS. Defendant PICOLOTTI, the only other NORCA employee who worked in the NORCA Burlingame office at the time, immediately quit and went to work for PRIMROSE METALS. On or about June 11, 2007, defendants unlawfully converted NORCA's telephone and fax numbers to their own use, represented that these numbers were PRIMROSE METALS' and changed the telephone message from "Thank you for calling Norca" to "Thank you for calling Bob Wren" or similar language.

27.    On information and belief, within two days thereafter, defendants, and each of them, in furtherance of their unlawful scheme, prepared and disseminated to NORCA's customers, suppliers and other persons a written announcement on PRIMROSE METALS' letterhead headed: "Primrose Metals replaces NORCA Industrial Company." The announcement:

a.    falsely represented, for example, that "Bob Wren is pleased to announce that Primrose Metals has replaced NORCA Industrial Company in providing financial, operating and logistical support to his customers and suppliers," when in fact the customers and suppliers belonged to NORCA, not WREN, and PRIMROSE METALS had not "replaced" NORCA;

FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

8

b. falsely stated that the telephone and fax numbers of PRIMROSE METALS were (650) 344-3291 and (650) 344-9241, respectively, which were the telephone and fax numbers for NORCA's Burlingame office, which defendants illegally switched to PRIMROSE and which bills were paid for by NORCA;

c. represented that PRIMROSE METALS was already representing mills, already had "the capacity to finance [their] entire production" and was already carrying a "broad range of insurance and provides other financial arrangements to bridge the risks of international trade," which, if true, further evidenced the advanced and on-going nature of defendants' unlawful scheme; and

d. represented that PRIMROSE METALS had the capability "to match or exceed the terms offered by other trading firm," which on information and belief evidenced defendants' use or intent to use NORCA's confidential and proprietary or trade secret information.

28. Subsequently, defendants issued another announcement, which contained many of the same representations, stated that WREN had joined PRIMROSE METALS as a Vice President, Sales, and again listed the telephone and fax numbers for PRIMROSE METALS which belonged to NORCA.

29. As a further part of defendants' scheme, defendants also used the www.primrosemetals.com website to unfairly compete with NORCA. Defendants' website likewise listed the telephone and fax numbers for PRIMROSE METALS which belonged to NORCA. Defendants also unlawfully copied verbatim and/or in substantially similar form a majority of the text appearing on the NORCA.com website (owned by Norca) directly onto the www.primrosemetals.com website.

<u>Defendants' Diversion of Norca's Business Opportunities</u>

30. Upon information and belief, in or about early June 2007, WREN and SONG deliberately failed to disclose an RFQ received by NORCA, usurped it for defendants' new venture and shortly thereafter submitted a quote on behalf of PRIMROSE METALS in response

to the RFQ. Defendants obtained the manufacturer's quote for that RFQ from NORCA's principal supplier (Changwon), in violation of NORCA's exclusive relationship with Changwon. This would not have been possible without WREN, SONG or others acting in concert with them having had prior and extensive communications with Changwon or its intermediaries about defendants' new venture - all during the period of WREN's employment with NORCA. NORCA is further informed and believes that defendants unlawfully used NORCA's trade secrets and confidential and proprietary information in formulating their quote in response to the RFQ.

31. On or about June 18, 2007, less than one week after WREN was terminated, PRIMROSE METALS began advertising for a "Corporate Controller" on the internet. The advertisement represents that, *inter alia*, Primrose Metals is a "heavily funded start-up metals trading company, with offices in SF, Colorado, Korea and Shanghai," that it has 8 employees and that it is "poised to grow exponentially during 2007 and 2008." If true, this further evidenced the magnitude of the unlawful actions taken to compete against NORCA while WREN was still employed by NORCA.

### Primrose Alloys, Inc.

32. On information and belief, in or about mid-June 2007, WREN, SONG and/or YARDE had a falling out with RAYBIN and LTG. On information and belief, WREN, SONG, YARDE and others therefore formed PRIMROSE ALLOYS, and WREN, SONG and PICOLOTTI began working for PRIMROSE ALLOYS. On information and belief, PRIMROSE ALLOYS was and is conducting the business operations originally intended for PRIMROSE METALS and was and is a further vehicle for perpetrating defendants' unlawful scheme.

### The Need For Injunctive Relief

33. Upon information and belief, defendants are unlawfully continuing to interfere with NORCA's exclusive relationship with Changwon for the boiler tube business, continuing to use NORCA's trade secrets and confidential and proprietary business information unfairly to compete against NORCA and to NORCA's competitive disadvantage, continuing to solicit
FIRST AMENDED COMPLAINT FOR TRO AND PRELIMINARY INJUNCTION, ETC. - Case No. C 07-3425 WHA
S:\Clients\Norca\8049.16 (Wren)\pld\rse-amended-complaint-070507.wpd

10

1  Norca's, suppliers, customers and vendors, and continuing to engage in the other unlawful
2  conduct alleged in this Complaint.  Unless restrained by order of this court, defendants will
3  continue to engage in such unlawful conduct, causing NORCA to suffer irreparable harm for
4  which it has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**(Trade Secret Misappropriation - Civil Code Sections 3426, et. Seq.)**

**(Against Defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG)**

34. Plaintiff realleges the allegations of paragraphs 1-33 hereof.

35. Plaintiff is informed and believes, and on that basis alleges, that the actions of defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN, LTG and others, and each of them, constitute misappropriation of plaintiff's trade secrets under California Civil Code Section 2436 et seq.

36. These trade secrets include, but are not limited to, the matters identified in paragraph 17 above.

37. Plaintiff's trade secrets have independent economic value as a result of not being known to the public or to plaintiff's competitors.  Prior to said defendants' misappropriations, these trade secrets also were not known to other persons able to obtain economic value from them.  Their secrecy has provided and continues to provide plaintiff with a commercial advantage over its competitors.  Accordingly, plaintiff has made and continues to make diligent efforts to protect the confidentiality and secrecy of that information.

38. Said defendants, and each of them, have misappropriated plaintiff's trade secrets without plaintiff's express or implied consent.

39. Plaintiff is informed and believes, and on that basis alleges, that said defendants have been using and, absent an injunction barring such conduct, will continue to use plaintiff's trade secrets to injure and damage plaintiff.

40. As a proximate result of the conduct of said defendants, plaintiff has incurred damages in an amount subject to proof at trial, but in any event greater than $75,000.

41. As a proximate result of said defendants' misappropriation of plaintiff's trade secrets, said defendants have been and will be unjustly enriched by reducing their own costs of doing business, by reducing their time to honestly and fairly develop their own competing business methods and to be able to compete, by increasing their market share and by providing them with other undeserved competitive advantages.

42. The conduct of said defendants was and is fraudulent, malicious and oppressive, and plaintiff is therefore entitled to an award of punitive damages against said defendants, under California Civil Code Section 2436.3. Plaintiff also is entitled to recover its attorneys' fees under California Civil Code Section 3426.4.

**SECOND CLAIM FOR RELIEF**

**(Unfair Business Practices - Cal. Bus. & Prof. Code Section 17200 et. seq.)**

**(Against all Defendants)**

43. Plaintiff realleges the allegations of paragraphs 1-33 hereof.

44. The acts of defendants, and each of them, as alleged above, constitute unlawful, unfair and fraudulent business acts or practices within the meaning of California Business and Professions Code Section 17200 et seq.

45. Plaintiff is informed and believes, and on that basis alleges, that said defendants have continued to engage in the conduct complained of herein and, unless restrained and enjoined, said defendants will continue to do so, causing plaintiff to suffer further irreparable harm. Plaintiff has no adequate remedy at law for said defendants' wrongful conduct, and money damages cannot fully compensate plaintiff for the injury and damages to its business. Plaintiff is therefore entitled to injunctive relief prohibiting said defendants from continuing to engage in such unlawful practices.

46. Plaintiff also is entitled to restitution and disgorgement of any profits resulting the unlawful, fraudulent and unfair business practices of said defendants.

47. The actions of defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

### THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### (Against Defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG)

48. Plaintiff realleges the allegations of paragraphs 1-33 hereof.

49. By reason of his status as an officer of plaintiff NORCA, defendant WREN owed fiduciary duties to plaintiff.

50. Defendant WREN, in concert with defendants SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN, LTG and others, and each of them, breached such fiduciary duties in the manner set for above.

51. Plaintiff is entitled to injunctive relief against said defendants to enjoin the further and continuing violations of such fiduciary duties.

52. As a proximate result of such breaches, plaintiff has been damaged in amounts not yet fully ascertained, but in excess of $75,000.

53. The actions of said defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

### FOURTH CLAIM FOR RELIEF

### (Breach of Duty of Loyalty)

### (Against Defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG)

54. Plaintiff realleges the allegations of paragraphs 1-33 hereof.

55. By virtue of his employment with plaintiff NORCA, defendant WREN owed a duty of loyalty to NORCA.

56. Plaintiff is informed and believes, and on that basis alleges, that WREN, in concert with defendants SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG and others, and each of them, breached such duty of loyalty by the conduct described in this Complaint.

57. Unless said defendants are retained by appropriate injunctive relief, plaintiff will suffer further immediate and irreparable harm for which there is no adequate remedy at law.

58. Said defendants will be unjustly enriched in an amount that is separate and distinct from plaintiff's damages.

59. As a proximate result of said defendants' conduct, plaintiff has been damaged in amounts not yet fully ascertained, but in excess of $75,000.

60. The actions of defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

## FIFTH CLAIM FOR RELIEF

**(Intentional Interference with Advantageous Business Relationships)**

**(Against Defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG )**

61. Plaintiff realleges the allegations of paragraphs 1-33 hereof.

62. Defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG and others, and each of them, were at all times aware that NORCA had, over a period of time and at a considerable expenditure of time, effort and money, developed advantageous business relationships with specific customers and suppliers. These relationships included, among others, a relationship whereby NORCA was the exclusive representative for Changwon to Norca's U.S. based customers for delivery to their worldwide fabrication facilities.

63. With full knowledge of such advantageous business relationships, each of them, and with the intent to wrongfully interfere with such relationships, said defendants engaged in the conduct herein alleged. Plaintiff is informed and believes and on that basis alleges that such

conduct has actually disrupted and will continue to disrupt plaintiff's business relationships with its suppliers and customers.

64. As a proximate result of such unlawful conduct, plaintiff has sustained and will continue to sustain damages in amounts not yet fully ascertained, but in excess of $75,000.

65. The actions of defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

## SIXTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Advantage)

### (Against Defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG)

66. Plaintiff realleges the allegations of paragraphs 1-33 hereof.

67. An economic relationship at all times relevant existed between plaintiff and its customers and suppliers, and each of them, respectively.

68. Upon information and belief, defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG, and each of them, knew of the existence of such relationships.

69. Said defendants intentionally engaged in wrongful conduct designed to interfere with or disrupt such relationships.

70. Said defendants intended to interfere or disrupt such relationships by luring plaintiff's customers and suppliers to do business with said defendants based upon the unfair use of plaintiff trade secrets, plaintiff's confidential and proprietary information and defendants' other unlawful conduct described in this Complaint.

71. Said defendants actually interfered and disrupted such relationships.

72. As a proximate result of such unlawful conduct, plaintiff has sustained and will continue to sustain damages in amounts not yet fully ascertained, but in excess of $75,000.

73. The actions of defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

**SEVENTH CLAIM FOR RELIEF**

**(Wrongful Misappropriation of Employer Property - Cal. Labor Code Section 2860)**

**(Against all Defendants WREN, SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG)**

74. Plaintiff realleges the allegations of paragraphs 1-33 hereof.

75. All documents and other information, including without limitation, plaintiff NORCA's trade secrets and confidential and proprietary information, which defendant WREN acquired by virtue of his employment with plaintiff, belong to plaintiff.

76. On information and belief, defendant WREN, in concert with defendants SONG, YARDE, PRIMROSE METALS, PRIMROSE ALLOYS, RAYBIN and LTG, wrongfully misappropriated such property in violation of California Labor Code Section 2860.

77. As a proximate result of such unlawful conduct, plaintiff has sustained and will continue to sustain damages in amounts not yet fully ascertained, but in excess of $75,000.

78. The actions of defendants, and each of them, were and are fraudulent, malicious and oppressive, and plaintiff is entitled to recover punitive damages against said defendants.

**PRAYER**

WHEREFORE, plaintiff prays for relief against defendants, and each of them, as follows:

1. The court issue a temporary, preliminary and permanent injunction enjoining defendants, and each of them, and each of their agents, servants, employees, attorneys and entities working with defendants, and those in active concert and participation with them, from:

    a. contacting, obtaining quotes, contracting with, accepting deliveries from or doing business with Changwon (now "Posco Specialty Steel Co. Ltd.") directly or through intermediaries;

    b. disseminating, disclosing or using for any purpose plaintiff's confidential and proprietary information and/or trade secrets including, but not limited to:

        i. NORCA's pricing information, pricing strategies, pricing formulation methods and profit margins;

        ii.    NORCA's proprietary credit insurance program;

        iii.    The list of manufacturing facilities used by NORCA and the specific contact person at each; the identities of the intermediaries used by NORCA to contact and negotiate with each such facility and the specific contact person for each; the credit, payment terms, shipping, insurance and other requirements demanded or accepted by each such facility; and NORCA's evaluation of the expertise, competence and reliability of each facility to manufacture particular types of products to specification in a timely fashion;

        iv.    The list of NORCA's customers and the specific contact names for each, the product specifications and requirements for each and NORCA's working knowledge of the decision-making process for each customer;

        v.    NORCA's proprietary software, which contains, among other things, NORCA's entire "trading package" with respect to the non-boiler tube business.

c.    contacting or soliciting the companies on NORCA's confidential list of customers and suppliers;

d.    representing that defendants, or any of them, have "replaced" NORCA or referring to NORCA's customers and/or suppliers as defendants';

e.    quoting, entering into or performing any contract derived from a request for quote pre-dating defendant WREN's termination;

f.    using the telephone and facsimile numbers (650) 344-3291 and (650) 344-9241 or representing that these numbers belong to defendants;

g.    publishing any of the text appearing on www.NORCA.com or language

substantially identical thereto on any website, including but not limited to www.primrosemetals.com, or in any of defendants' advertisements or promotional materials;

    h.    disposing of or destroying any documents, records, files, proposals, invoices, bills, customer lists, contact lists, ledgers, computer files, computer discs, correspondence or other information sources, which contain or may contain any of defendants' information regarding solicitation or servicing of NORCA's customers or suppliers or any of NORCA's confidential and proprietary information and/or trade secrets set forth in subsection (b) above or defendants' use or dissemination thereof;

    2.    Compensatory damages in an amount to be determined, but in excess of $75,000;

    3.    Punitive damages;

    4.    Reasonable attorneys' fees, litigation expenses, and costs as provided by law;

    5.    Pre-judgment interest; and

    6    Such other and further relief as this Court may deem just and proper.

DATED: July 6, 2007                          PHILLIPS, ERLEWINE & GIVEN LLP

By:_____/s/_____
      R. SCOTT ERLEWINE
      Attorneys for Plaintiff

### REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and issues.

DATED: July 6, 2007                          PHILLIPS, ERLEWINE & GIVEN LLP

By:_____/s/_____
      R. SCOTT ERLEWINE
      Attorneys for Plaintiff